# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BRIAN M.[1],                                    Case No. 1:23-cv-130
      Plaintiff,                              Litkovitz, M.J.

      vs.

COMMISSIONER OF                          **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff Brian M. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in opposition (Doc. 7), and plaintiff's reply memorandum (Doc. 8).

## I.  Procedural Background

On March 16, 2021, plaintiff protectively filed an application for DIB alleging disability beginning October 23, 2020, due to ankylosing spondylitis, degenerative disc disease, thoracic outlet syndrome, post-traumatic stress disorder, and chronic shoulder pain with limited mobility. (Tr. 279-85, 323). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Noceeba Southern. Plaintiff and a vocational expert ("VE") appeared telephonically and testified at the ALJ hearing. (*Id.*). On January 27, 2022, the ALJ issued a decision denying plaintiff's DIB application. (Tr. 109-28). The Appeals Council granted plaintiff's request for review and remanded the matter for further proceedings. (Tr. 129-34).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

On remand, the claim was assigned to ALJ Southern.  After a telephone hearing held on September 29, 2022 (Tr. 37-62), the ALJ issued a decision denying plaintiff's DIB application on October 7, 2022.  (Tr. 14-36).  This decision became the final decision of the Commissioner when the Appeals Council denied review on January 10, 2023.  (Tr. 1-6).

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2022.

2. [Plaintiff] has not engaged in substantial gainful activity since October 23, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. [Plaintiff] has the following severe impairments: Degenerative Disc Disease of the Lumbar Spine and Osteoarthritis of the Right Upper Extremity - status/post Arthroscopic Right Rotator Cuff Repair (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could stand/walk 4 hours in an 8-hour day, and sit 6 hours in an 8-hour day; he could frequently push and/or pull with the right upper and lower extremities; he could occasionally climb ramps and stairs; he should avoid climbing ladders, ropes, or scaffolds; he could occasionally stoop, kneel, crouch, and crawl; he could frequently reach in all directions with the right upper extremity; he should avoid exposure to hazards, including moving machinery, heavy machinery and working at unprotected heights; he would alternate between sitting and standing every hour, and, while sitting for 3-4 minutes and remaining on task;

3

he could frequently handle items with the bilateral upper extremities; and, otherwise, his time off task would not to exceed 5% of workday.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] was born . . . [in] 1979 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 23, 2020, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 20-30).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Plaintiff's past relevant work was a Program Manager, Research, a sedentary, skilled position, and military officer, a light, but performed at the heavy level of exertion, skilled position. (Tr. 28, 56-57).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations in the national economy such as labeler (50,000 jobs), sorter (50,000 jobs), and sales attendant (35,000 jobs). (Tr. 29-30, 58).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

## D.  Specific Errors

In his Statement of Errors, plaintiff alleges the ALJ erred at step two of the sequential evaluation process by failing to find plaintiff's ankylosing spondylitis was a severe impairment. (Doc. 6).  Plaintiff further argues the ALJ's step two finding was not supported by substantial evidence because the ALJ's finding was not identical to the prior ALJ's step two finding.  (*Id.* at PAGEID 1703-04).  Plaintiff also argues the ALJ failed to properly evaluate physical therapist Ricardo Duque's opinions contained in the functional capacity evaluation ("FCE").  (*Id.* at PAGEID 1702-03).  Finally, plaintiff argues the ALJ's residual functional capacity ("RFC") is not supported by substantial evidence.  (*Id.* at PAGEID 1705-06).  The Commissioner generally argues that the ALJ's decision is supported by substantial evidence, and the ALJ properly evaluated the opinions from Mr. Duque.  (Doc. 7)

**1. The ALJ's step two finding is supported by substantial evidence (first and third assignments of error).**

In his first assignment of error, plaintiff alleges the ALJ erred at step two of the sequential evaluation process by failing to find ankylosing spondylitis to be a severe impairment. (Doc. 6 at PAGEID 1699-1702). Plaintiff argues this impairment "must be considered severe" because it "causes inflammation, pain, and difficulty in movement[,] is being treated by a Rheumatologist with medications such as Humira[,]" and it "significantly limit[s] the physical or mental ability to do basic work activities." (*Id.* at PAGEID 1702). Plaintiff contends "to believe ankylosing spondylitis is not severe when [plaintiff's] doctors are treating him for it just does not make sense." (*Id.* at PAGEID 1699-1700; *see also* Doc. 8).

The Commissioner argues the ALJ's step two finding concerning plaintiff's ankylosing spondylitis is supported by substantial evidence because the evidence of record "does not show that the ankylosing spondylitis significantly limited Plaintiff's ability to perform basic work activities, as required to find a severe impairment." (Doc. 7 at PAGEID 1713). Citing treatment records, the Commissioner argues that plaintiff "failed to meet his burden to show with objective medical evidence that the ankylosing spondylitis was a severe impairment." (*Id.* at PAGEID 1712-14, citing Tr. 600-01, 1105, 1113, 1192, 1205-06, 1538, 1633). The Commissioner further argues that "any error in the failure to find ankylosing spondylitis a[s] severe at step two" is not reversible error because "the ALJ found that Plaintiff had other impairments that were severe, and therefore had to consider all impairments, severe and not severe, in the sequential evaluation process." (*Id.* at PAGEID 1714, citing cases).

The regulations define a severe impairment as one that significantly limits the ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Plaintiff is not required to establish total disability at this level of the sequential evaluation process. Rather, the severe impairment

6

requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Sec'y of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secy of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "de minimis hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ finds that the claimant "has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "This rule is predicated on the notion that the ALJ 'properly could consider [the] claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity." *Id*. (quoting *Maziarz*, 837 F.2d at 244). The Court must consider whether the ALJ "'consider[ed] limitations and restrictions imposed by all of [the claimant]'s impairments,' including his non-severe impairments, in the remaining steps of the disability determination." *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5). In other words, where the ALJ considers the "non-severe" impairments when determining the claimant's RFC, "'it is unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two." *Fisk*, 253 F. App'x at 584 (citing *Maziarz*, 837 F.2d at 244).

The ALJ found that plaintiff "has the following severe impairments: Degenerative Disc Disease of the Lumbar Spine and Osteoarthritis of the Right Upper Extremity – status/post Arthroscopic Right Rotator Cuff Repair. . . ." (Tr. 20). The ALJ specifically addressed plaintiff's ankylosing spondylitis at step two of the sequential evaluation process but did not find it to be a severe impairment:

> An impairment or combination of impairments is not severe if it does not significantly limit the physical or mental ability to do basic work activities (20 CFR 404.1522 and SSR 85-28). Under that standard, the record does not document other severe impairments. Rather, the record otherwise documents only conservative treatment for relatively minor, resolved, nonrecurring, or controlled complaints and conditions, including . . . Ankylosing Spondylitis (4F; 7F; 8F; 11F; 17F; 19F; 20F & 26F). . . .

(*Id*.).

Plaintiff has not shown that the ALJ committed reversible error at step two of the sequential evaluation process. When the ALJ asked about plaintiff's ankylosing spondylitis at the September 29, 2022 hearing, counsel for plaintiff informed the ALJ that plaintiff's ankylosing spondylitis was diagnosed by MRI in 2016 at the New Hanover Regional Medical Center. (Tr. 51-52). Counsel for plaintiff, however, could not identify where this MRI existed in the medical evidence of record. (Tr. 52).[4] The ALJ asked counsel for plaintiff to explain the more recent MRI and X-ray of plaintiff's lumbar spine, conducted on July 10, 2020, which showed no evidence of ankylosing spondylitis. (Tr. 51).[5] Counsel for plaintiff told the ALJ that the July 10, 2020 MRI "was actually looking at a different area of the spine from where the ankylosing spondylitis was diagnosed. The MRI that diagnosed the spondylitis I wanna say S2 and S3 where that MRI did not go that low." (*Id*.).

---

[4] In the Court's review, this referenced MRI is not in the medical record presented before the Court.
[5] The July 10, 2020 MRI and X-ray of plaintiff's lumbar spine showed, in pertinent part, "no evidence of ankylosing spondylitis." (Tr. 560).

The medical record shows that plaintiff was "initially diagnosed" with ankylosing spondylitis in "2016." (Tr. 1188). In a June 30, 2021 treatment note, Certified Nurse Practitioner Fan Wang reported that plaintiff had "been on humira and celebrex since 2016 with stable conditions." (*Id*.). Ms. Wang further reported that "[r]epeated Xrays and MRIs in 2020/2021 showed no AS changes or narrowing of SI joints." (Tr. 1192; *see also* Tr. 1188: x-rays and MRIs "showed no signs of AS."). Ms. Wang noted that plaintiff's ankylosing spondylitis had "been well controlled." (Tr. 1193).

Plaintiff cites two treatment notes in support of his argument that his ankylosing spondylitis "is currently being treated by use of Humira, Tramadol, and Celecoxib and physical therapy." (Doc. 6 at PAGEID 1700-01, citing Tr. 613, 661). While these treatment notes show that plaintiff had "a history of ankylosing spondylitis" (Tr. 661) and "is tre[ated] with Humira" (Tr. 613), there is no evidence of record that plaintiff's ankylosing spondylitis limits plaintiff's ability to do work, and this diagnosis, standing alone, is insufficient to establish that the impairment is severe. *See Higgs*, 880 F.2d at 863 ("The mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."). *See also Young v. Sec'y of H.H.S.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). Moreover, there is no evidence that plaintiff required further treatment for this condition other than the use of medication nor is there any medical opinion that it impairs his functional abilities. (*See* Tr. 1188, 1192-93). The ALJ found that plaintiff suffered from multiple severe physical impairments, and the ALJ considered plaintiff's symptoms and resulting limitations when formulating the RFC. (*See* Tr. 22-28). Plaintiff has not identified any other specific limitations, and he has not pointed to any medical evidence indicating there are

9

additional functional limitations imposed by his diagnosis of ankylosing spondylitis which the ALJ should have included in the RFC.

In any event, even if the ALJ erred in this regard, any such error would be harmless because the ALJ found plaintiff had several severe impairments and continued with the remaining steps of the sequential evaluation process. *Winn*, 615 F. App'x at 326. The ALJ comprehensively examined the medical evidence of record, including treatment records documenting plaintiff's ankylosing spondylitis, and formulated an RFC based on all of his impairments, both severe and non-severe. Accordingly, the ALJ committed no error in failing to categorize plaintiff's ankylosing spondylitis as a "severe" impairment at step two of the sequential evaluation process, and the ALJ's step two finding concerning plaintiff's ankylosing spondylitis is therefore supported by substantial evidence.

In his third assignment of error, plaintiff alleges the ALJ's step two finding is not supported by substantial evidence because the ALJ failed to "find[] at minimum the same severe impairments as her prior unfavorable decision which was Remanded." (Doc. 6 at PAGEID 1703-04). As best the Court can discern, plaintiff argues the ALJ omitted from the degenerative disc disease of the lumbar spine severe impairment the word "radiculopathy" and that it occurred "status/post L3-L4 revision laminotomy." (*Id*. at PAGEID 1704). Plaintiff contends, with no citation to any authority, that "all severe impairments from the previous unfavorable decision may be added to but not subtracted." (*Id*.). Plaintiff argues that "[i]mpairments do not just disappear especially given that the decision of 1/27/2022 and 10/7/2022 are less than 9 months apart." (*Id*.).

The Commissioner argues the ALJ's step two finding in this regard is supported by substantial evidence because "the ALJ did not subtract any severe impairments, as Plaintiff

suggests." (Doc. 7 at PAGEID 1721). Examining the prior ALJ decision with the current ALJ decision, the Commissioner argues that "the ALJ found the same two impairments severe even if she did not further narrow the first impairment down to whether it was with or without radiculopathy or post-surgery." (*Id*. at PAGEID 1722). The Commissioner contends that "while the ALJ may not have mentioned radiculopathy or the revision laminotomy in further defining the severe impairment of degenerative disc disease, there is no dispute in this case that the ALJ not only considered Plaintiff's complaints of radiculopathy, but also considered evidence of the revision laminectomy or microdiscectomy to address those complaints and Plaintiff's condition following that surgery in assessing Plaintiff's RFC." (*Id*., citing Tr. 23-28).

In the pre-Appeals Council remand decision dated January 27, 2022, the ALJ found that plaintiff had the following severe impairments: "Degenerative Disc Disease of the Lumbar Spine with Radiculopathy - status/post [] L3 - L4 Revision Laminotomy and Osteoarthritis of the Right Upper Extremity - status/post Arthroscopic Repair of the Right Rotator Cuff." (Tr. 114). In the current ALJ decision before the Court dated October 7, 2022, the ALJ found the following severe impairments: "Degenerative Disc Disease of the Lumbar Spine and Osteoarthritis of the Right Upper Extremity - status/post Arthroscopic Right Rotator Cuff Repair." (Tr. 20).

Both ALJ decisions found that plaintiff had two severe impairments: Degenerative Disc Disease and Osteoarthritis of the Right Upper Extremity. (Tr. 20, 114). While plaintiff is technically correct that the ALJ omitted in the step two finding that plaintiff had severe Degenerative Disc Disease with "radiculopathy" and was "status/post L3-L4 Revision Laminectomy," the Court cannot find this omission constitutes reversible error. As the Commissioner correctly observes (Doc. 7 at PAGEID 1722), there is no dispute that the ALJ methodically examined the medical evidence of record, including treatment records documenting

11

plaintiff's diagnoses and complaints of radiculopathy, as well as evidence that that plaintiff underwent a L3-L4 Revision Laminotomy. (Tr. 23-26).

The ALJ noted that prior to the alleged onset date, an MRI of plaintiff's lumbar spine revealed evidence of a prominent right-sided disc extrusion at L3-L4. (Tr. 23, citing Tr. 466). The ALJ noted that plaintiff was diagnosed with lumbar radiculopathy. (*Id*., citing Tr. 458, 541). The ALJ further cited records where plaintiff complained of low back pain which radiated down his left lower extremity, and plaintiff elected to proceed with a L3-L4 microdiscectomy. (Tr. 24, citing Tr. 456-57). The ALJ discussed plaintiff's L3-L4 laminectomy with excision of an L3-L4 herniated nucleus pulpous and foraminotomy, due to a diagnosis of lumbar herniated nucleus pulpous and lumbar radiculopathy. (*Id*., citing Tr. 461-63).

The ALJ also discussed plaintiff's follow-up visits in late 2020 and early 2021 following his lumbar discectomy. (*Id*., citing, e.g., Tr. 422-455, 640-81, 910-62). The ALJ noted that plaintiff had low back pain and lumbar radiculopathy in April 2021, and he was administrated lumbar epidural steroid injections on April 26, 2021 and June 28, 2021. (Tr. 25, citing Tr. 414, 907, 1141). The ALJ noted plaintiff sought treatment with complaints of low back pain on August 23, 2021, and he elected to proceed with a revision L3-L4 microdiscectomy procedure. (*Id*., citing Tr. 1123-24). Thereafter, the ALJ stated that plaintiff underwent a L3-L4 revision laminectomy procedure, due to a diagnosis of L3-L4 herniated nucleus pulpous and lumbar radiculopathy. (*Id*., citing Tr. 1099-1100). Following this surgery, the ALJ discussed a May 5, 2022 treatment note where plaintiff presented for evaluation with complaints of low back pain radiating into his right buttock and shooting down his right leg to his foot. (*Id*., citing Tr. 1314). The ALJ noted that plaintiff was diagnosed with status-post Laminectomy/Microdiscectomy and Lumbar Radiculopathy. (Tr. 26, citing Tr. 1315, 1317; *see also Id*., citing Tr. 1654-55, where

12

the ALJ discussed a September 9, 2022 treatment note where plaintiff was diagnosed with Post-Laminectomy Syndrome and Lumbar Radiculopathy).  The ALJ also discussed a June 15, 2022 MRI of plaintiff's lumbar spine.  (*Id.*, citing Tr. 1402-05).

The ALJ's discussion shows she did not disregard the evidence of radiculopathy or the revision laminectomy in ultimately assessing plaintiff's RFC.  In fact, the ALJ specifically noted this evidence when limiting plaintiff to alternate sitting and standing and off-task restrictions in the RFC.  (Tr. 24, 25).  Plaintiff has not shown that the ALJ committed reversible error at step two of the sequential evaluation process by omitting the previous findings of radiculopathy and revision laminectomy.  Notably, plaintiff has not cited any authority supporting his claim that an ALJ's step two finding on remand must be identical to a prior step two finding.  Importantly, it is undisputed that the ALJ found plaintiff suffered from multiple severe physical impairments, and the ALJ considered plaintiff's symptoms and resulting limitations when formulating the RFC.  (*See* Tr. 22-28).  Although plaintiff argues the ALJ erred by failing to include the same exact severe impairments as the prior ALJ decision, plaintiff has not identified any specific limitations which the ALJ should have included in the RFC.  As explained above in connection with plaintiff's first assignment of error, even if the ALJ erred in this regard, any such error would be harmless because the ALJ found plaintiff had several severe impairments and continued with the remaining steps of the sequential evaluation process.  *Winn*, 615 F. App'x at 326.  Accordingly, the ALJ committed no error at step two of the sequential evaluation process, and the ALJ's step two finding is therefore supported by substantial evidence.

### 2. The ALJ's evaluation of physical therapist Ricardo Duque's opinions is not supported by substantial evidence (second assignment of error).

Plaintiff's second assignment of error alleges the ALJ's evaluation of physical therapist Ricardo Duque's Functional Capacity Evaluation (FCE) opinions is not supported by substantial

evidence. (Doc. 6 at PAGEID 1702-03). Plaintiff alleges he receives 100% disability from the military, and Mr. Duque's evaluation and opinions "reinforced the same impairments already found by the military." (*Id*. at PAGEID 1703). Plaintiff argues that Mr. Duque opined, among other limitations, that plaintiff could only occasionally reach, finger, and handle, and the ALJ found these opinions to be unpersuasive. (*Id*.). The Commissioner argues the ALJ's evaluation of Mr. Duque's opinions is supported by substantial evidence. (Doc. 7 at PAGEID 1715-21). The Commissioner contends the ALJ properly found the medical record documented grossly normal physical examination findings. (*Id*. at PAGEID 1717-19, citing portions of the medical record). The Commissioner argues that "[g]iven this evidence, the ALJ properly found Mr. Duque's opinion inconsistent with and unsupported by the totality of the record, including the mostly normal examination findings." (*Id*. at PAGEID 1719, citing Tr. 27).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[6] *Id*. The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[7] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

---

[6] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[7] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[8] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[8] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

Mr. Duque performed a FCE on July 28, 2021.  (Tr. 1023-25).  Mr. Duque reported that plaintiff suffered from numerous significant deficits, such as decreases in lifting, carrying, pulling, pushing, sitting, standing, walking tolerances, hand grip, and dexterity.  (Tr. 1024). Following the evaluation, Mr. Duque opined that plaintiff could occasionally lift and carry 15-20 pounds; he could sit for 15 minutes and stand and walk for 30 minutes without interruption; he occasionally would need a cane for ambulation; he could occasionally perform overhead and other reaching with the right and left hand; he could occasionally handle, finger, feel, push and pull, and operate foot controls; he could climb ramps and stairs occasionally but never climb ladders; and he could rarely stoop, kneel, crouch, or crawl.  (Tr. 1024-25).

The ALJ found Mr. Duque's opinions "to be overall non-persuasive, as said opinion is neither totally consistent with nor supported by the totality of the record, which regularly documents grossly normal physical examination findings."  (Tr. 27).

Concerning the consistency factor, the Court finds the ALJ's evaluation is supported by substantial evidence.  The ALJ examined the medical evidence of record and determined that Mr. Duque's FCE opinions were contrary to other medical records which regularly documented grossly normal physical examination findings.  (*Id.*).  Although the ALJ did not cite specific medical evidence in the section evaluating Mr. Duque's opinions, the ALJ nevertheless thoroughly examined plaintiff's treatment history in her decision.  (Tr. 23-26).  "When evaluating consistency, the [Court] looks to the ALJ's immediate discussion regarding [the] opinion, and also to h[er] discussion of the record elsewhere in the opinion.  This is because the ALJ's opinion ought to be read as a whole."  *William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022) (Report and Recommendation), *adopted*, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022) (citing cases).  For example, the ALJ

16

cited progress notes consistently showing normal gait and strength, full spinal motion with no tenderness, intact sensation, and normal extremities with 5/5 strength (Tr. 24, citing 456, 452, 453, 455, 470-71), and grossly normal findings including full musculoskeletal range of motion with no tenderness to palpation, normal neurological finds with 5/5 strength and no sensory deficits, normal gait, full spinal motion, intact sensation, and 5/5 strength in the upper and lower extremities (Tr. 25, citing Tr. 416, 1124, 1136, 1203, 1317). Though plaintiff at times exhibited some abnormal findings on examination, the evidence cited by the ALJ showing grossly normal physical examination findings substantially supports her consistency evaluation.

However, the ALJ erred by not considering the mandatory supportability factor pursuant to 20 C.F.R. § 404.1520c(b)(2), (c)(1). The supportability factor requires an examination of the medical sources opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions will be." 20 C.F.R. § 404.1520c(c)(1). While consistency requires the ALJ to compare the source's opinion to the *other* record evidence, supportability "addresses whether a medical professional has sufficient justification for their *own* conclusions." *Elizabeth A. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-cv-02313, 2023 WL 5924414, at *4 (S.D. Ohio Sept. 12, 2023) (emphasis in the original) (citing *Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-cv-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022)). The ALJ is required to "explain how [she] considered the supportability" factor under the regulations. 20 C.F.R. § 404.1520c(b)(2).

Although the ALJ used the word "supported" when she evaluated Mr. Duque's opinions—stating his "opinion is neither totally consistent with nor supported by the totality of the record"—the ALJ failed to explain the extent to which Mr. Duque's opinions were

17

purportedly not supported by Mr. Duque's own supporting explanations or the objective medical evidence set forth in his report. *See William G.*, 2022 WL 4151381, at *12 ("The ALJ repeatedly failed to evaluate supportability properly. That is, he did not explain how the objective medical evidence or supporting explanations for the medical opinions were considered."). The ALJ was required to evaluate and explain the extent to which Mr. Duque's opinions were or were not supported by his objective findings and explanations. *See Jenna B. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-00176, 2022 WL 4395682, at *6 (S.D. Ohio Sept. 23, 2022) (ALJs are "required to explain their evaluation of the supportability and consistency factors. [20 C.F.R. § 404.1520c(b)(2)]. The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs"). The Commissioner's references to Mr. Duque's FCE findings that purportedly failed to support his restrictive opinions (Doc. 7 at PAGEID 1720) are unavailing, as these were not reasons given by the ALJ for her decision. *See Miller v. Berryhill*, No. 3:16-cv-94, 2017 WL 1021313, at *8 (S.D. Ohio Mar. 16, 2017) (explaining that the Court generally should not accept post-hoc rationalizations for agency action unless any associated error is harmless). "[A]n ALJ's failure to follow agency procedures does not constitute harmless error when it prevents [the Court] from meaningfully reviewing his or her decision. . . ." *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 440 (6th Cir. 2018). In the absence of any explanation on the supportability factor, the Court finds the ALJ's persuasiveness evaluation of Mr. Duque's opinions is not supported by substantial evidence. This matter must be remanded for an evaluation of the supportability of Mr. Duque's opinions pursuant to 20 C.F.R. § 404.1520c(c)(1), including an explanation by the ALJ for her findings.

### 3. **Plaintiff's fourth assignment of error is sustained.**

In his fourth assignment of error, plaintiff alleges the ALJ's RFC is not supported by substantial evidence. (Doc. 6 at PAGEID 1704-06). The RFC finding states, in relevant part, that plaintiff could stand/walk 4 hours in an 8-hour day, and sit 6 hours in an 8-hour day. (Tr. 22). The ALJ imposed a further limitation: plaintiff "would alternate between sitting and standing every hour, and, while sitting for 3-4 minutes and remaining on task." (*Id.*).

Plaintiff argues this further limitation is ambiguous and fails to support substantial gainful activity. He posits:

> [T]he ALJ did not state how long [plaintiff] could sit for at one time or how long he could stand for at one time. The RFC says while sitting for 3-4 minutes that [plaintiff] could remain on task. If [plaintiff] is sitting for 30 minutes or an hour at one time, **then being on task for only 3-4 minutes would mean [plaintiff] is off task the majority of the time sitting**.

(Doc. 6 at PAGEID 1705).

The Commissioner acknowledges the "RFC finding is not exactly a model of clarity" but argues that in context "it is evident that it allows Plaintiff to alternate between sitting and standing while remaining on task." (Doc. 7 at PAGEID 1724, citing Tr. 22, 27, 57-58). The Commissioner also argues the ALJ was not required to specify in the RFC how much walking, sitting, or standing plaintiff could perform at one time (*Id.* at PAGEID 1724) and, in any event, the RFC finding also specified that plaintiff's "**time off task would not exceed 5% of the workday.**" (*Id.*, citing Tr. 22).

The Court agrees with plaintiff that the RFC is ambiguous, and it is not clear what the limitation of alternating "between sitting and standing every hour, and, while sitting for 3-4 minutes and remaining on task" actually means. Nor is it clear how the qualification of "sitting for 3-4 minutes and remaining on task" would impact plaintiff's RFC. The Commissioner

19

argues that it is clear the RFC permitted plaintiff "to alternate between sitting and standing while remaining on task" (Doc. 7 at PAGEID 1724), but this explanation would render the limitation of "sitting for 3-4 minutes and remaining on task" superfluous. To compound matters, when questioning the VE, the ALJ gave yet another version of the RFC to meet the Commissioner's step five burden: "[T]his hypothetical individual would benefit from the sit/stand option every hour -- every hour ***standing*** *sitting for three to four minutes on task*." (Tr. 57) (emphasis added). The VE answered this question, but he did not testify to the jobs plaintiff could perform if limited to the RFC the ALJ actually set forth in her decision, including the requirement that plaintiff "would alternate between sitting and standing every hour, and, while sitting for 3-4 minutes and remaining on task." (Tr. 22). For this reason, the Commissioner has not met her burden at step five of the sequential evaluation process, and this matter must be remanded for a clarification of plaintiff's RFC and further vocational evidence.

### III. This matter is reversed and remanded for further proceedings.

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter is reversed and remanded for further proceedings with instructions to the ALJ to reevaluate Mr. Duque's opinions in accordance with this decision; to reassess plaintiff's RFC; and for further medical and vocational development.

Based on the foregoing, plaintiff's statement of errors (Doc. 6) is **SUSTAINED**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER**

20

**PROCEEDINGS** consistent with this Order.

       **IT IS SO ORDERED.**

Date:    <u>2/9/2024</u>

                                        Karen L. Litkovitz
                                        Chief United States Magistrate Judge